## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | |
|---|---|
| **WILLIAM LANHAM** | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **MUKAM HOTELS LLC, NISH** | ) |
| **JOBALIA, BRAD PATEL and** | ) |
| **HIREN DAYARAMANI** | ) |
| **Defendants** | ) |

## COMPLAINT

Come now the Plaintiff, William Lanham, by and through counsel, and for cause of action shall respectfully show to the Court as follows:

1.      This action for damages is brought to redress Defendants' contravention of the Fair Labor Standards Act of 1938, 29 U.S.C. §§201 *et seq.,* by retaliatory actions taken against Plaintiff for engaging in protected activity under the FLSA. Plaintiff seeks damages for back pay, front pay, damages for emotional distress, liquidated and punitive damages along with his reasonable attorney's fees, costs and expenses incurred due to Defendants' wanton and willful violations of the Fair Labor Standards Act.

2.      The Fair Labor Standards Act was of 1938 was codified to protect and correct working conditions detrimental to workers. "The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706-07, 65 S. Ct. 895, 89 L.

1

Ed. 1296 (1945); Cited by *Williams v. Alimar Sec., Inc.*, No. 13-12732, 2016 U.S. Dist. LEXIS 150119, at 4-6 (E.D. Mich. Oct. 31, 2016). "'Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees.'" Cited by *Williams v. Alimar Sec., Inc.*, No. 13-12732, 2016 U.S. Dist. LEXIS 150119, at 4-6 (E.D. Mich. Oct. 31, 2016).

3.      The FLSA also proscribes illegal actions "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act (29 USCS §§ 201 et seq.; or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee. 29 USCS § 215.

4.      Additionally, 29 CFR §531.35 states, "Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee *unless* they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 CFR §531.35.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §1331.

6.      All actions arising under this complaint occurred in Davidson County Tennessee, therefore proper venue lies with the Middle District of Tennessee pursuant to 28 U.S.C.

2

§ 1391(b).

**PARTIES**

7.      Plaintiff is a former employee of Country Inn and Suites by Radisson, 590 Donelson Pike Nashville, Tennessee 37214 and Mukam Hotels LLC, (collectively "Defendants").

8.      The Defendant, Mukam Hotels, LLC is a domestic Limited Liability Company formed in Tennessee whose principal office is located at 590 Donelson Pike, Nashville, Tennessee 37214-3731. The registered agent is Mary Margo Turner, 2010 21st Avenue South, Nashville, Tennessee 37212-4314.

9.      Plaintiff was an employee within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(e)(1).

10.      Defendant, Brad Patel is the General Manager of the Country Inn and Suites by Radisson owned by Mukam Hotels LLC.

11.      Defendant, Hiren Dayaramani is the Manager of the Country Inn and Suites by Radisson owned by Mukam Hotels LLC.

12.      Defendant, Nish Jobalia is an owner of the Country Inn and Suites by Radisson operated by Mukam Hotels LLC.

13.      Defendant, Mukam Hotels LLC, is an employer within the meaning of 29 U.S.C. § 203(d) of the Fair Labor Standards Act.

14.     Defendants, are an employer within the meaning of 29 U.S.C. § 203(d) of the Fair Labor Standards Act.

15.     Defendants, Hiren Dayaramani, Brad Patel and Nish Jobalia, exercised control over the hours worked by Plaintiff.

16.     Defendants, Hiren Dayaramani, Brad Patel and Nish Jobalia, exercised control over the manner in which work was performed by Plaintiff.

17.     Defendants, Hiren Dayaramani, Brad Patel and Nish Jobalia, exercised control over compensation paid to Plaintiff.

18.     Defendant, Brad Patel, in the capacity as General Manager, acted directly and/or indirectly in the interest of and on behalf of Defendants with regard to Plaintiff.

19.     Defendant, Hiren Dayaramani, in the capacity as Manager, acted directly and/or indirectly in the interest of and on behalf of Defendants with regard to Plaintiff.

20.     Defendants, Hiren Dayaramani, Brad Patel and Nish Jobalia are responsible in whole or in part for the violations of the FLSA discussed herein.

21.     Defendant Employer comprise an enterprise engaged in commerce within the meaning of the Fair Labor Standards Act 29 U.S.C. § 203(e)(1).

22.     Defendant Employer has earned in excess of $500,000.00 in annual dollar volume of business in each of the past three years.

4

23.     The Plaintiff was engaged in interstate commerce, the production of goods for interstate commerce, or an activity which is closely related and directly essential to the production of such goods in each work week of his employ with Defendants.

## FACTUAL ALLEGATIONS

24.     On or about March 2017, Plaintiff commenced employment in maintenance at the Hampton Inn later renamed the TraveLodge Hotel located at 202 Northgate Circle in Goodlettsville, Tennessee.

25.     On or about March 2018, Plaintiff began to work at another location, in addition to the TraveLodge, a sister property, the Country Inn and Suites in Donelson.

26.     At all times relevant to this action, Brad Patel was the Plaintiff's General Manager and Hiren Dayaramani was Plaintiff's Manager.

27.     At the time Plaintiff commenced employment he agreed to a compensation of $12 per hour on the condition that it would be raised to $15 per hour in November 2018.

28.     Plaintiff's responsibilities consisted of general maintenance at both hotel properties, including plumbing, dry wall repair and electrical work.

29.     In mid-August 2018, The Department of Labor (DOL),  Mr. Tarantino, came to the Hotel and asked Plaintiff about his hours worked and overtime pay. Plaintiff engaged in protected activity by responding to the DOL investigation.

30.     The Department of Labor completed their investigation and determined that Plaintiff was underpaid overtime due to the fact that he was employed at two hotel locations simultaneously

by the same employer, however for the purposes of overtime the employer treated them separately and paid Plaintiff two payroll checks.

31.     On or about September 2018, Hiren Dayaramani met with Plaintiff and raised his hourly rate 1 dollars to $13 per hour.

32.     On or about December 5, 2018, Plaintiff was paid one check of $2,139.84, which constituted overtime and liquidated damages as determined by the Department of Labor.

33.     Shortly thereafter, Plaintiff inquired about his promised raise in salary to $15 per hour, to which Hiren Dayaramani, responded, "Don't be so greedy, you have been paid by the DOL".

34.     Approximately 2 weeks later, on or about December 2018, Hiren Dayaramani, cornered Plaintiff in the maintenance area of the hotel and asked him to give back money he received as a result of the DOL audit. Plaintiff refused to comply with Dayaramani's demand, however Dayaramani refused to back down and  began pressuring Plaintiff to return the money. Defendant alerted Plaintiff that since he refused to payback the DOL monies that he would not receive a pay increase as promised.

35.     Plaintiff's wife then contacted the Department of Labor and spoke with the investigator, Mr. Tarentino, who informed her that the employer could not withhold or demand payback of the damages paid to Plaintiff as a result of the unpaid overtime.

36.     Plaintiff, relayed the information he received from Tarentino to Mr. Dayaramani, however, Dayaramani continued to demand payback of the DOL assessed damages. This behavior never ceased but instead increased over time.

37.     Defendants' behavior toward Plaintiff deteriorated dramatically in the following few months.The harassment and humiliation became an everyday occurrence.

38.     Plaintiff was employed full-time, 40+ hours per week prior to the DOL payment. After Plaintiff refused to payback his DOL money, Defendant materially reduced his hours which in turn reduced his salary dramatically. At that point, Plaintiff never worked a 40-hour week again for Defendant.

39.     Plaintiff became aware that he was being surveilled by management during his normal operational duties a practice that had never occurred before Defendant pressed Plaintiff for payback of the DOL check.

40.     On or about April 26, 2019, Plaintiff was issued a written warning which alleged violation of company policy, but failed to cite the actual policy. Plaintiff was disciplined for installing a lock on the maintenance locker. The lock had been on his locker during his entire tenure of employment with Defendant. Plaintiff was suspended for two-days.

41.     At that point, Plaintiff's material responsibilities were curbed and diminished.

42.     Plaintiff was continually surveilled and under the watchful eye of management, a practice never before used by Defendant. Normal operational duties associated with his maintenance responsibilities now required management review and approval.

43.     The relationship between Plaintiff and Defendant became contentious to the point that Plaintiff was ordered not to enter the building until his time for work. Previously, Plaintiff always arrived early to work, went to the time clock, and clocked in on time. Now he was not allowed into the building until after his scheduled time to work. Defendant clearly communicated that Plaintiff was no longer "welcome" in the hotel.

44.      Defendant deliberately created an intolerable work environment, as alleged in the foregoing averments, with the intention of forcing Plaintiff to quit or be fired.

45. Unable to tolerate the extreme conditions placed by Defendants on Plaintiff, he was constructively discharged on July 26, 2019. In his resignation letter, Plaintiff stated in part, "I have felt threatened that I was going to lose my job ever since you asked me to give back half of the money the Department of Labor was giving me and I refused I feel that you have been harassing and humiliating me to force me to quit or fired since November. "I enjoyed working here until the Department of Labor audit; I am sorry I had to refuse giving back the Department of Labor money."

46. Plaintiff was retaliated against for engaging in protected activity by answering the Department of Labor Investigators' questions.

47. All other reasons provided by Defendants for their retaliatory actions against Plaintiff are mere pretext.

## VIOLATION OF THE FAIR LABOR STANDARDS ACT: RETALIATION

48. Plaintiff hereby re-alleges paragraphs 1 through 47 as though fully set for herein.

49. "To make a prima facie case of retaliation, a plaintiff must prove that "(1) he engaged in protected activity under the FLSA; (2) his exercise of this right was known by the employer; (3) the employer took an employment action adverse to him; and (4) there was a causal connection between the protected activity and the adverse employment action." *Pettit v. Steppingstone, Ctr. for the Potentially Gifted*, 429 F. App'x 524, 530 (6th Cir. 2011). Cited by *McKinnon v. L-3 Communs. Corp.,* No. 1:16-CV-00458-MRB, 2018 U.S. Dist. LEXIS 137126, at *26-27 (S.D. Ohio Aug. 14, 2018).

50.     Plaintiff engaged in protected activity by complying with the Department of Labor Audit regarding Defendants' wage and hour practices.

51.     Defendants immediately took adverse employment actions against the Plaintiff; namely, reducing his hours materially hours from 40+ per week and not complying with agreement to raise his hourly pay.

52.     Pursuant to 29 U.S.C. § 215, Plaintiff was entitled to engage in and assert FLSA protected activities and rights without retaliation.

53.     A causal link exists between the Defendants' decision to constructively discharge Plaintiff and the Plaintiff engaging in FLSA protected activity.

54.     Defendants retaliated against Plaintiff for not returning his liquidated damages to the Defendants by slashing his work schedule to considerably less than his usual 40+ hour workweek.

55.     Defendants' actions against Plaintiff were in retribution and retaliation for participating in the investigation conducted by the Department of Labor and for refusing to return the check for liquidated damages.

56.     Defendants' relentless pressure to return his check for liquidated damages, is, in itself, an act of retaliation.

57.     Defendants had no legitimate, non-retaliatory reason for their actions described herein, and any reason given by Defendants would be pretextual in nature.

## CONSTRUCTIVE DISCHARGE

58.     Plaintiff hereby re-alleges paragraphs 1 through 47 as though fully set for the herein.

59.     The elements of the claim of constructive discharge include, 1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person, (2) the employer did so with the intention of forcing the employee to quit, and (3) the employee actually quit." *Savage v. Gee*, 665 F.3d 732, 739 (6th Cir. 2012). Cited by *Festerman v. Cty. of Wayne,* 611 F. App'x 310, 319 (6th Cir. 2015).

60.     It is undisputed that Defendants dramatically reduced Plaintiff's work hours after he after he engaged in protected activity, responded to the DOL investigation and refused to return the liquidated check to Defendants. Defendants knew that by reducing his hours he would be forced to look for other employment. Defendants made the work environment intolerable by creating an intolerable work environment that left Plaintiff with no reasonable choice, either resign or be fired.

**WHEREFORE**, Plaintiff requests this court enter judgment in favor of the Plaintiff and against Defendants, for:

1.     A finding that Defendants are liable to Plaintiff for willful violations of the anti-retaliation requirements of the Fair Labor Standards Act.

2.     A finding that Defendants are liable to Plaintiff for Defendants' illegal retaliation in violation of the Fair Labor Standards Act.

3.    An award compensating the Plaintiff for Defendants' illegal retaliation including back pay, front pay, liquidated damages, punitive damages, compensation for any special damages sustained as a result of the discharge or discrimination, including litigation costs, expert witness fees, and reasonable attorney's fees, and prejudgment interest.

4.    Such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

s/Frank J. Steiner
Frank J. Steiner          BPR# 26920
2200 21st Avenue South, Suite 309
Nashville, Tennessee 37212
(615) 730-6090
franksteiner@franksteinerlaw.com
*Attorney for Plaintiff*